**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

**PAUL KAPRELIAN**, on behalf of himself and all others similarly situated,

Plaintiff,

v.

**JOHNSON CONTROLS, INC.,**

Defendant

Case No. 2:25-cv-1091

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Paul Kaprelian ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated (the "Class members"), brings this Class Action Complaint against Defendant Johnson Controls, Inc. ("Johnson Controls" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

2. Plaintiff brings this action against Defendant for its failure to safeguard highly sensitive data.

3. Defendant provides "building technology and software as well as service solutions from some of the most trusted names in the industry."[1] Defendant maintains its headquarters in North America in Milwaukee, Wisconsin.[2]

---

[1] *Johnson Controls*, LINKEDIN, https://www.linkedin.com/company/johnson-controls/ (last visited July 3, 2025).
[2] *Find a Representative Near You*, JOHNSON CONTROLS, https://www.johnsoncontrols.com/finda-rep (last visited July 3, 2025).

4. Defendant stores highly sensitive personal identifiable information ("PII") about its clients and its current and former employees. Defendant's computer systems were breached by cybercriminals because of those systems were not sufficiently secure (the "Data Breach").

5. Cybercriminals had access to Defendant's computer systems for an unknown period of time before Defendant caught wind of the Data Breach. Defendant did not use adequate methods to prevent, detect, stop, or mitigate this breach. On information and belief, Defendant did not train its employees on cybersecurity and did not implement or maintain reasonable security protocols to ensure the security of the sensitive PII it held. Because of these failures in basic cybersecurity, Defendant left the Class members' PII open to disclosure to unauthorized agents.

6. Plaintiff is a former employee of Defendant and a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendant's misconduct.

## PARTIES

7. Paul Kaprelian is a natural person and citizen of Wisconsin. He resides in Franksville, Wisconsin where he intends to remain.

8. Defendant, Johnson Controls, Inc. is a Wisconsin corporation with its principal place of business in the United States at 5757 N. Green Bay Ave., Milwaukee, Wisconsin 53209.

9. Plaintiff Kaprelian reserves the right to add additional parties as more information becomes available.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Defendant and at least one Class Member are citizens of different states. And there are over 100 putative Class members.

11. This Court has personal jurisdiction over Defendant because it is headquartered in Wisconsin, regularly conducts business in Wisconsin, and has sufficient minimum contacts in Wisconsin.

12. Venue is proper in this Court because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendant Collected and Stored the PII of Plaintiff and the Class***

13. Defendant was formed in 1885 and bills itself as holding the "world's largest portfolio of building technology, software and services."[3] Defendant, with its corporate operation and subsidiaries, employs more than 100,000 individuals in over 150 countries[4] and reported $7.4 billion in revenue for the fourth fiscal quarter of 2024.[5]

14. As part of its operations, Defendant collects and retains the personally identifiable information (PII) of tens of thousands of clients, as well as current and former employees.

15. In obtaining and maintaining this PII, Defendant promised to protect the data in accordance with its internal policies, as well as applicable state and federal laws. Plaintiff and the Class members independently took reasonable measures to safeguard their own PII.

---

[3] *See Celebrating 140 years of powering your mission*, JOHNSON CONTROLS, https://www.johnsoncontrols.com/about-us/our-company/celebrating-140-years (last visited July 16, 2025).

[4] Sergiu Gatlan, *Johnson Controls starts notifying people affected by 2023 breach*, BLEEPING COMPUTER (July 1, 2025), https://www.bleepingcomputer.com/news/security/johnson-controlsstarts-notifying-people-affected-by-2023-breach/.

[5] *Johnson Controls Reports Q4 and FY24 Results; Initiates FY25 Guidance*, JOHNSON CONTROLS, chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.johnsoncontrols.com/-/media/project/jci-global/johnson-controls/us-region/united-states-johnson-controls/mediacenter/documents/q4-fy24-earnings-release-final.pdf (last visited July 3, 2025).

16. Pursuant to applicable state and federal laws, businesses such as Defendant have a duty to safeguard the personally identifiable information (PII) of their clients and current and former employees, and to provide timely notification in the event of a data breach.

17. Defendant recognizes these duties, declaring in its "Privacy Notice" that "[a]t Johnson Controls, we value your privacy and are committed to protecting your personal information in accordance with fair information practices and applicable data privacy laws."[6]

18. Defendant further promises its customers that it is a "partner in privacy," and is "helping the customer to use the product confidently and compliantly."[7]

19. Despite acknowledging its duty to safeguard sensitive information, upon information and belief, Defendant has failed to implement reasonable cybersecurity measures or policies to protect the PII of its clients and current and former employees. Additionally, Defendant has not adequately trained its employees to prevent, detect, or respond to cyber threats. As a result, Defendant's systems remain significantly vulnerable to exploitation by cybercriminals, placing clients' and employees' PII at serious risk.

***Defendant's Data Breach***

20. On September 24, 2023, Defendant discovered it was hacked in the Data Breach.[8]

---

[6] *Privacy Notice*, JOHNSON CONTROLS, https://www.johnsoncontrols.com/trust-center/privacy/global-privacy-notice/johnson-controls-privacy-notice_english (last visited July 23, 2025).

[7] *Data Privacy Sheets*, JOHNSON CONTROLS, https://www.johnsoncontrols.com/trust-center/privacy/data-privacy-sheets (last visited July 23, 2025).

[8] Defendant's notice of data breach ("Breach Notice") is available on multiple attorney general websites publicly, including the website for the Vermont Attorney General. *See, e.g.*, Breach Notice (June 30, 2025), *available at* https://ago.vermont.gov/sites/ago/files/documents/2025-06-30%20Johnson%20Controls%20Data%20Breach%20Notice%20to%20Consumers.pdf (last accessed July 24, 2025).

21. According to Defendant, it "launched an investigation with the support of leading third-party experts and took steps to prevent further access and remove the actor from the network."[9]

22. Defendant admitted that "an unauthorized actor accessed certain Johnson Controls systems from February 1, 2023 to September 30, 2023 and took information from those systems."[10]

23. Because of Defendant's failures to adequately prevent the Data Breach, cybercriminals were, upon information and belief, able to obtain the Plaintiff and the Class members' names, dates of birth, addresses, driver's license numbers, and Social Security numbers.

24. Due to the obfuscating language in Defendant's Breach Notice, it is unknown when how the Data Breach occurred, how many people were impacted by the Data Breach, or what type of PII was stolen by the "unauthorized actor."

25. And yet, Defendant waited until June 30, 2025, *645 days* after it learned of the Data Breach.[11] This delay left the Class without the ability to mitigate their injuries in a timely manner.

26. Finally, when Defendant notified Plaintiff and the Class of the Data Breach, Defendant acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft. In its notice to Plaintiff and the Class, Defendant warned to "remain vigilant for incidents of fraud and identity theft, including by regularly reviewing your account statements and monitoring credit reports" and that the class "should also be cautious of any unsolicited communications asking for personal information. In addition, if a username and

[9] *Id.*
[10] *Id.*
[11] *Id.*

password are listed among your information above, we recommend that you change your login credentials for online accounts"[12]

27. Defendant breached its duties to Plaintiff and the Class by failing to prevent the Data Breach and stop cybercriminals from accessing its clients' and current and former employees' PII. This caused widespread monetary damages to the entire Class and required that Class members spend time mitigating their damages.

28. Defendant has since stated that it is taking steps to enhance its security controls but these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach for Defendant to satisfy its duties to the Class.

29. Defendant has not explained what these steps are either. Because of this, based on information and belief, Plaintiff's and Class members' PII remains unsecure.

30. The Notice of Data Breach must be interpreted to state that Defendant cannot, or will not, determine the complete extent what information was stolen, how it was stolen, and when it happened.

31. Defendant has done little to remedy its Data Breach. While Defendant has offered some victims limited credit monitoring and identity related services, upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendant inflicted upon them.

32. As a result of Defendant's Data Breach, the sensitive PII of Plaintiff and Class members was exposed to cybercriminals, causing substantial harm and significant damages to Plaintiff and the Class.

[12] *Id*.

***Cybercriminal Group "Dark Angels" is Linked to the Data Breach***

33. Cybersecurity analysts have linked the Data Breach to the "Dark Angels" hacking group.[13]

34. These specific hackers breach company networks and move laterally until they gain administrative access.[14] While the hackers are in these computers, they take PII from the servers and use the data to demand ransoms.[15] Dark Angels operates a data leak site named "Dunghill Leaks" that is used to extort its victims, threatening to leak data if a ransom is not paid.[16]

35. On September 27, 2023 Nextron Systems threat researcher Gameel Ali tweeted a sample of a Dark Angels' message to Defendant.[17]

```
-------------------------------------------------------------------------

                 HELLO dear Management of Johnson Controls International!

If you are reading this message, it means that:
      - your network infrastructure has been compromised,
      - critical data was leaked,
    - files are encrypted,
    - backups are deleted

    ------------------------------------------------------
    |                                                    |
    |    by  D A R K   A N G E L S   T E A M  !          |
    |                                                    |
    ------------------------------------------------------

            The best and only thing you can do is to contact us
              to settle the matter before any losses occurs.

-------------------------------------------------------------------------
```

[13] *See supra* n.4.
[14] Lawrence Abrams, *Dark Angels ransomware receives record-breaking $75 million ransom*, BLEEPING COMPUTER (July 30, 2024), https://www.bleepingcomputer.com/news/security/dark-angels-ransomware-receives-record-breaking-75-million-ransom/.
[15] *Id.*
[16] *Id.*
[17] *Id.*

36. The message left by the Dark Angels included a link to a negotiation chat between Defendant and Dark Angels where the ransomware gang demanded $51 million for a decryptor and to delete the data stolen from Johnson Controls' network.[18]

37. As part of the attack, Dark Angels encrypted Defendant's VMware ESXi virtual machines during the attack and claimed to have stolen over 27 TB of documents containing corporate data.[19]

38. To date, Defendant has not made any public statements regarding Dark Angels or whether it made a ransomware payment.

39. On information and belief, even if Defendant paid a ransom demand, this would not ensure the security of Plaintiff's and the Class's PII. While ransomware groups state they will remove stolen data from their data leak sites when a ransom is paid, there is no guarantee that the data will be deleted.[20] That data is valuable and can easily be sold to another threat actor, so there is little incentive to delete it.[21]

40. Defendant confirmed that data was exfiltrated in a ransomware attack it its November 13, 2023 filing to the Securities and Exchange Commission, where it stated the Data Breach "consisted of unauthorized access and deployment of ransomware by a third party" and that it continued to analyze the "data accessed, exfiltrated or otherwise impacted."[22]

---

[18] *Id.*
[19] *Id.*
[20] Steve Adler, *Majority of Ransomware Victims That Pay a Ransom Suffer a Second Attack*, THE HIPAA JOURNAL (Feb. 23, 2024), https://www.hipaajournal.com/majority-of-ransomwarevictims-that-pay-a-ransom-suffer-a-secondattack/#:~:text=While%20ransomware%20groups%20usually%20remove,little%20incentive%20to%20delete%20it.
[21] *Id.*
[22] Johnson Controls, Inc. (13 Nov. 2023). Form 8-K 2023. Retrieved from SEC EDGAR website https://www.sec.gov/Archives/edgar/data/833444/000083344423000038/jci-20231113.htm.

41. As the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[23]

42. Thus, on information and belief, Plaintiff's and the Class's PII has already been published by Dark Angels on the dark web.

***Plaintiff's Experiences and Injuries***

43. Plaintiff Paul Kaprelian was an employee of Defendant from approximately 1981 to 1994.

44. As a condition of his employment, Plaintiff was required to transmit his PII to Defendant and provide Defendant his PII. Thus, Defendant obtained and maintained Plaintiff's PII. As a result, Plaintiff was injured by Defendant's Data Breach.

45. Defendant used that PII to facilitate its business and, indirectly, to make a profit.

46. In providing PII to Defendant, Plaintiff trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law.

47. Defendant continues to maintain Plaintiff's PII. Defendant thus has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

48. Plaintiff reasonably understood that a portion of the funds that Defendant derived from his employment would be used to pay for adequate cybersecurity and protection of PII.

49. Plaintiff received a notice letter about the Data Breach from Defendant dated July 4, 2025.

[23] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-forsale-on-the-dark-web-should-you-buy-it-back.

50. In the notice letter, Defendant stated that the Data Breach compromised Plaintiff's name, date of birth, address, Social Security number, non-national ID government-issued identification number, information related to health insurance or payment for medical treatment, employee identification number, and information related to the internal investigation of claims or disputes.

51. Plaintiff suffered actual injury from the exposure and theft of his PII and its threatened or actual publication on the dark web, which violates his rights to privacy.

52. Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property Defendant was required to adequately protect.

53. Plaintiff suffers imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII in the hands of cybercriminals.

54. Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

55. Today, Plaintiff has a continuing interest in ensuring that his PII, a copy of which, upon information and belief, continues to be held by Defendant, is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft.***

56. Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class members suffered, and will continue to suffer, damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a. loss of the opportunity to control how their PII is used;

b. diminution in value of their PII;

c. compromise and continuing publication of their PII;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII; and

h. continued risk to their PII, which remains in Defendant's possession and is at risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII.

57. Stolen PII is one of the most valuable commodities on the dark web. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of contents of the information. The value of Plaintiff and the Class's PII on the black market is considerable. Stolen PII remains on the black market for years, which continues to cause damage to Plaintiff and the Class.[24]

58. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII far and wide.

---

[24] *See* Miklos Zoltan, *Dark Web Price Index 2023*, PRIVACY AFFAIRS (Apr. 23, 2023), https://www.privacyaffairs.com/dark-web-price-index-2023/.

59. One way that criminals profit from stolen PII is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining the stolen PII and other unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.) The development of "Fullz" packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

60. Once criminal match the stolen PII along with the other information to create a Fullz package, they can sell it at a higher price to other unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and this misuse is fairly traceable to the Data Breach.

61. Defendant in fact disclosed and exposed the PII of Plaintiff and Class members to unscrupulous people who will use the PII for online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts.

62. Defendant exacerbated Plaintiff and the Class's damages by its failure to promptly and properly notify Plaintiff and the Class members of the Data Breach. If Plaintiff and the Class were given a reasonable notice of the Data Breach, they could have taken appropriate measures to protect their PII.

***Defendant Knew Or Should Have Known of the Risk of a Data Breach.***

63. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

64. In 2021, 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records, a 68% increase from 2020.[25]

65. Due to the rise of data breaches, the FBI and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[26]

66. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[27]

67. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

68. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses like Defendant should use to protect against unlawful data exposure.

---

[25] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.

[26] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targetedransomware.

[27] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffersphishing-attack (last visited Sept. 11, 2023).

69. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[28] The FTC stated that businesses must:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

70. Under the FTC's guidelines, companies must also watch for large movements of data out of their system and plan to respond any breach or security incident.

71. Additionally, the FTC established a series of requirements companies must do to prevent data breaches: 1. not maintain information longer than is needed to authorize a transaction; 2. limit access to sensitive data; 3. require complex passwords to be used on networks; 4. use industry-tested methods for security; 5. monitor for suspicious activity on the network; and 6. verify that third-party service providers use reasonable security measures.

72. The FTC sees companies' failure to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Under this authority, businesses receive orders identifying the additional measures businesses must take to meet their data security obligations.

---

[28] *Protecting Personal Information: A Guide for Business*, FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personalinformation.pdf.

73. The failure to use reasonable and appropriate measures to protect against unauthorized access to clients' and current and former employees' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards.***

74. Defendant failed to implement basic industry best practices. This includes: educating employees; requiring strong passwords; multi-layer security, including firewalls, anti-virus, and antimalware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting employees' access permissions.

75. Other industry standard best practices include: installing adequate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

76. Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of the NIST Cybersecurity Framework Version 2.0.

77. Defendant failed to use basic industry security protocols and essentially handed the keys to Plaintiff and the Class' PII to cybercriminals.

## CLASS ACTION ALLEGATIONS

78. Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach affecting Defendant in September 2023, including all those individuals who received notice of the Data Breach.

79. Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

80. Plaintiff reserves the right to amend the class definition.

81. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

82. Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Defendant already identified some individuals and sent them data breach notices.

83. Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 3,477 members.

84. Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

85. Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class members' interests. And Plaintiff has retained counsel that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

86. Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions, which predominate over any questions affecting

individual Class members, for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

a. if Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

b. if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c. if Defendant were negligent in maintaining, protecting, and securing PII;

d. if Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

e. if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

f. if Defendant's Breach Notice was reasonable;

g. if the Data Breach caused Plaintiff and the Class injuries;

h. what the proper damages measure is; and

i. if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

87. Superiority. A class action will provide substantial benefits to all Class members. This class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Individualized litigation will increase

the delay and expense to all parties and the courts, as well as create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
**Negligence**
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

89. Plaintiff and the Class entrusted their PII to Defendant with the expectation that it would be properly protected, used solely for legitimate business purposes, and not disclosed to unauthorized third parties.

90. Defendant owed a duty of care to Plaintiff and the Class because it was reasonably foreseeable that failing to implement data security measures consistent with industry standards would result in a breach compromising their PII. That very risk materialized in this case.

91. Defendant was fully aware of the sensitive nature of the PII and the potential harm that Plaintiff and the Class would suffer if that information were improperly disclosed.

92. Defendant owed these duties to Plaintiff and the Class because they belong to a well-defined, foreseeable, and likely group of individuals whom Defendant knew—or should have known—would be harmed by its inadequate security practices. Indeed, Defendant actively collected and retained the PII of Plaintiff and Class members.

93. Defendant owed to Plaintiff and Class members, at the very least, the following duties to:

a. exercise reasonable care in handling and using the PII in its care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access;

d. notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

94. Defendant had a duty to timely and accurately inform Plaintiff and Class members of the scope, nature, and occurrence of the Data Breach. This was necessary for Plaintiff and the Class members to take appropriate steps to protect their PII, remain vigilant against potential misuse, and mitigate harm.

95. Defendant had a duty to implement proper data retention and disposal practices, including removing PII it was no longer required to retain under applicable laws and regulations.

96. Defendant knew or reasonably should have known that failing to exercise reasonable care in collecting, storing, and using Plaintiff's and the Class's PII created an unreasonable risk of harm, even if such harm resulted from the criminal acts of third parties.

97. Defendant's duty to implement reasonable security measures arose from the special relationship it had with Plaintiff and Class members, who entrusted Defendant with sensitive PII as a condition of receiving services.

98. It was foreseeable that unauthorized individuals would attempt to access and misuse the PII. Given the volume and sensitivity of the data Defendant maintained, it was not a question of if, but when, such an attempt would occur—whether through malware or other means

99. PII is highly valuable, and Defendant knew or should have known of the risks associated with collecting, handling, storing, and transmitting such data. Defendant had a responsibility to use reasonable care in safeguarding it.

100. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

101. Defendant breached these duties as evidenced by the Data Breach.

102. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a. disclosing and granting access to this information to unauthorized third parties and

b. Failing to adequately supervise the storage, use, transmission, and handling of PII by its personnel and systems.

103. Defendant also breached its duties by failing to exercise reasonable care in overseeing its agents, contractors, vendors, and suppliers, directly and proximately causing the Data Breach and the resulting harm to Plaintiff and Class members

104. Defendant further violated its obligations by failing to provide timely notice of the Data Breach, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

105. Defendant has publicly admitted that the PII of Plaintiff and the Class was wrongfully taken and disclosed to unauthorized third persons because of the Data Breach.

106. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary

damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

107. Upon information and belief, Plaintiff and the Class's PII has already been published, or will be published imminently, by cybercriminals on the Dark Web.

108. Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible injuries-in-fact and damages. This includes, without limitation, the theft of Plaintiff and the Class members' PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
**Negligence *per se***
**(On Behalf of Plaintiff and the Class)**

109. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

110. Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII.

111. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class members' sensitive PII.

112. Defendant breached its respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII.

113. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's unreasonable actions are exacerbated by the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

114. The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC applies the FTC Act in enforcement actions against businesses which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

115. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiff and Class members would not have been injured.

116. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that it was failing to meet its duties and that a data breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

117. Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

118. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**THIRD CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

119. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

120. Plaintiff and Class members were required to provide their PII to Defendant as a condition of [receiving employment provided by Defendant]/[utilizing Defendant's products]. Plaintiff and Class members provided their PII to Defendant in exchange for [Defendant's employment]/[using Defendant's products].

121. Plaintiff and Class members reasonably understood that a portion of the funds [generated by their employment]/[paid to Defendant for its products] would be used to pay for adequate cybersecurity measures.

122. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

123. Plaintiff and the Class members accepted Defendant's offers by disclosing their PII to Defendant in exchange for employment.

124. In turn, and through internal policies, Defendant agreed to protect and not disclose the PII to unauthorized persons.

125. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and the Class members' PII.

126. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

127. Plaintiff and Class members would not have entrusted their PII to Defendant in the absence of such an agreement with Defendant.

128. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

129. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

130. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

131. Defendant materially breached the contracts it entered with Plaintiff and Class members by:

a. failing to safeguard their information;

b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

c. failing to comply with industry standards;

d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

e. failing to ensure the confidentiality and integrity of the electronic PII that Defendant created, received, maintained, and transmitted.

132. In these and other ways, Defendant violated its duty of good faith and fair dealing.

133. Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries.

134. Upon information and belief, Plaintiff's PII has already been published, or will be published imminently, by cybercriminals on the dark web.

135. Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

**<u>FOURTH CAUSE OF ACTION</u>**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

136. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

137. The State of Wisconsin recognizes the right of privacy as codified by Wis. Stat. § 995.50.

138. Notably, § 995.50(2)(am) defines "invasion of privacy" as including:

a. "Intrusion upon the privacy of another of a nature highly offensive to a reasonable person . . . in a place that a reasonable person would consider private[.]"

b. "Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed."

139. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

140. Defendant owed a duty to its clients and current and former employees, including Plaintiff and the Class, to keep this information confidential.

141. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII is highly offensive to a reasonable person.

142. The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class reasonably believed that Defendant would keep the information private and would not disclose the PII without their authorization.

143. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

144. Defendant acted knowingly when it permitted the Data Breach because it knew its information security practices were inadequate.

145. Defendant acted knowingly when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

146. Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

147. As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

148. Upon information and belief, Plaintiff's PII has already been published, or will be published imminently, by cybercriminals on the dark web.

149. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by Defendant with their inadequate cybersecurity system and policies.

150. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

151. In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

## FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

152. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

153. This claim is pleaded in the alternative to the breach of implied contract claim.

154. Plaintiff and Class members conferred a benefit upon Defendant. Defendant benefitted from (1) their custom or employment and/or (2) using their PII to facilitate its business operations.

155. Defendant appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

156. Plaintiff and Class members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

157. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII.

158. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

159. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and Class members' PII and/or profits from their employment because Defendant failed to adequately protect their PII.

160. Plaintiff and Class members have no adequate remedy at law.

161. Defendant should be compelled to disgorge into a common fund, for the benefit of Plaintiff and Class members, all unlawful or inequitable proceeds that it received because of its misconduct.

## SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

162. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

163. Given the relationship between Defendant and Plaintiff and Class members, where Defendant became guardian of Plaintiff's and Class members' PII, Defendant became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

164. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Defendant's relationship with them. This includes Defendant's duty to maintain the security of Plaintiff and the Class members' PII.

165. Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII had they known how Defendant's security measures were failing to secure their PII.

166. Defendant breached its fiduciary duties to Plaintiff and Class members by failing to implement adequate encryption protocols or other safeguards necessary to protect their PII.

167. Defendant also breached its fiduciary duties to Plaintiff and Class members by failing to promptly identify, investigate, and disclose the Data Breach within a timeframe that would be considered reasonable and appropriate under the circumstances.

168. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries.

**SEVENTH CAUSE OF ACTION**
**Violation of the Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. §§ 100.18, *et seq.***
**(On Behalf of Plaintiff and the Class)**

169. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

170. The Wisconsin Deceptive Trade Practices Act ("WDTPA") prohibits a person or firm with intent to offer anything for sale or hire from making any representations to "the public" that are "untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

171. Here, Defendant violated WDTPA because (1) Defendant represented (affirmatively and/or by omission) to the public that it would keep sensitive information confidential as an inducement for the public to disclose such information, (2) Defendant's

representations were untrue, deceptive, and/or misleading because Defendant did not implement adequate data security systems, and (3) such representations caused pecuniary losses.

172. Defendant's violations of WDTPA further include, among others:

a. failing to sue and maintain reasonable security and privacy measures to safeguard Plaintiff's and Class members' PII, which was a direct and proximate cause of the Data Breach;

b. failing to identify foreseeable security and privacy risks, fix identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*., which was a direct and proximate cause of the Data Breach;

d. omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class members' PII; and

e. omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

173. Defendant's omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of their PII.

174. Defendant intended to mislead Plaintiff and Class members and induce them to rely on its omissions.

175. Defendant understood that if individuals like Plaintiff and the Class members knew of the insufficiencies in Defendant's data security environment, those customers would not give Defendant their PII and Defendant's business would crumble. Instead, those customers would have required Defendant to comply with its appliable duties and responsibilities under the law. Defendant took Plaintiff and the Class members' PII without telling them of its inadequate data security. Plaintiff and Class members acted reasonably in relying on Defendant's omissions, the truth of which they could not have discovered through reasonable investigation.

176. Defendant acted intentionally, knowingly, maliciously, and recklessly disregarded Plaintiff's and Class members' rights.

177. Plaintiff and the Class members have suffered and still do suffer from injuries, ascertainable losses of money or property, and monetary and non-monetary damages. These include losses from identity theft and fraud; time and expenses used in monitoring fi9nancial accounts for fraudulent activity; an increased and imminent risk of fraud and identify theft; and the lost value of their PII. All of this is a direct and proximate result of Defendant's unfair and deceptive acts and practices.

178. Upon information and belief, Plaintiff and the Class members' PII has already been published, or will be published imminently, by unauthorized third parties.

179. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

**<u>EIGHTH CAUSE OF ACTION</u>**
**Declaratory Judgment**
**(On Behalf of Plaintiff and the Class)**

180. Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

181. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

182. An actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendant's actions were, and remain, inadequate and unreasonable. Plaintiff and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

183. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendant owed, and continues to owe, a legal duty to use reasonable data security to secure the data entrusted to it;

b. Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendant breached, and continues to breach, its duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendant breaches of its duties caused, and continues to cause, injuries to Plaintiff and Class members.

184. The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security protocols consistent with industry standards to protect the data entrusted to it.

185. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendant experiences a second data breach. If this happens, Plaintiff and the Class will lack an adequate remedy at law because the resulting injuries cannot be fully quantified and may need to bring a subsequent lawsuit for the same inadequate security protocols. Monetary damages, though warranted in this case for numerous reasons (including but not limited to out-of-pocket damages), cannot completely remedy Plaintiff and Class members' injuries.

186. The hardship on Defendant if an injunction issues will be minimal. However, without an injunction, Plaintiff and the Class members will suffer a hardship that far exceeds any hardship claimed by Defendant.

187. By issuing an injunction, the Court would benefit the public by preventing additional data breaches An injunction would benefit the public by preventing another data breach impacting the Plaintiff, the Class, and the public.

**PRAYER FOR RELIEF**

Plaintiff and the Class members respectfully request judgment against Defendant and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendant from further unfair and/or deceptive practices;

E. Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting other relief that this Court finds appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial for all claims so triable.

Date: July 25, 2025

Respectfully submitted,

By: */s/ Jessica N. Servais*

**LOCKRIDGE GRINDAL NAUEN, PLLP**
Jessica N. Servais (WI #1048014)
Karen Hanson Riebel*
Kate M. Baxter-Kauf*
Emma Ritter Gordon*
Jacob E. Lanthier*
100 Washington Ave. S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

jnservais@locklaw.com
khriebel@locklaw.com
kmbaxter-kauf@locklaw.com
erittergordon@locklaw.com
jelanthier@locklaw.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*